UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MEIA BURKS, individually and<br>on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BI-STATE DEVELOPMENT AGENCY<br>OF THE MISSOURI-ILLINOIS METRO-<br>POLITAN DISTRICT d/b/a "METRO"<br>and S.M. HUBER ENTERPRISES, INC.<br>d/b/a "ABOVE ALL PERSONNEL,"<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 4:09CV1302 (MLM) |

**CLASS ACTION SETTLEMENT AGREEMENT**

1.     This  class  action  settlement  agreement  (hereinafter  "SETTLEMENT

AGREEMENT")  is  made  and  entered  into  by  and  between  PLAINTIFF  MEIA  BURKS

("CLASS REPRESENTATIVE") and all members of the "SETTLEMENT CLASS" or "CLASS

MEMBERS"  as  described  herein,  on  the  one  hand,  and  DEFENDANTS  THE  BI-STATE

DEVELOPMENT  AGENCY  OF  THE  MISSOURI-ILLINOIS  METROPOLITAN  DISTRICT

d/b/a METRO ("METRO") and S.M. HUBER ENTERPRISES, INC. d/b/a ABOVE ALL

PERSONNEL ("ABOVE ALL PERSONNEL")  (collectively, "DEFENDANTS") on the other

hand.

2.     The  CLASS  REPRESENTATIVE,  the  SETTLEMENT  CLASS,  and

DEFENDANTS are collectively, referred to as the "PARTIES." "CLASS COUNSEL" is Mark

Potashnick, Weinhaus & Potashnick, 11500 Olive Blvd., Suite 133, St. Louis, MO  63141.

Counsel for DEFENDANTS are James C. Hetlage, Lashly & Baer, P.C., 714 Locust Street, St.

1



EXHIBIT
A

Louis, MO 63101, Attorneys for DEFENDANT METRO and Michael F. Harris, Harris, Dowell, Fisher & Harris, L.C., 15400 S. Outer Forty Drive, Suite 202, Chesterfield, MO 63017, Attorneys for DEFENDANT ABOVE ALL PERSONNEL. CLASS COUNSEL and counsel for DEFENDANTS are collectively referred to as the "Attorneys."

3.     The SETTLEMENT CLASS shall include all persons who worked for either or both DEFENDANTS as non-exempt Reservation Clerks or Dispatchers in Metro's Call-A-Ride Division at any time during the period from August 13, 2007, to June 4, 2010.

4.     Attached as Exhibit 1 is a list of all known CLASS MEMBERS. DEFENDANTS have endeavored in good faith to prepare the list based upon its records kept in the ordinary course of business. CLASS COUNSEL has reviewed the list attached as Exhibit 1 and, to the best of his present knowledge and information, reasonably believes that such list is full and complete.

5.     On August 13, 2009, CLASS COUNSEL filed a Complaint against DEFENDANTS on behalf of PLAINTIFF Meia Burks and others similarly situated (the "LITIGATION"). The Complaint alleges that certain employees of DEFENDANTS were not compensated for work-related activities performed prior to their scheduled shift time and for work-related activities performed after their scheduled shift time or during their duty-free lunch breaks. The CLASS REPRESENTATIVE asserted individual and class claims seeking unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and the Missouri Wage Payment Laws, Ch. 290 RSMo., and under certain breach of contract, unjust enrichment and quantum meruit theories. DEFENDANTS filed timely Answers to the Complaint, denying all allegations of wrongdoing. METRO also filed a Motion to Dismiss Counts III-V of the Complaint against it. PLAINTIFF voluntarily dismissed Counts III-V against METRO.

6.     On September 17, 2010, the PARTIES reached an agreement to settle the LITIGATION subject to the COURT'S preliminary and final approval.

7.     It is the desire of the PARTIES to fully, finally, and forever settle, compromise, and discharge all disputes and claims that PLAINTIFF Meia Burks raised on her own behalf and on behalf of the SETTLEMENT CLASS in the LITIGATION or that relate to or reasonably could have arisen out of the same facts alleged in the LITIGATION.

8.     It is the intention of the PARTIES that this SETTLEMENT AGREEMENT shall constitute a full and complete settlement and release of claims pursuant to the terms described herein, which release includes all claims for wage and hour violations accrued through the date of the COURT'S final approval of the SETTLEMENT AGREEMENT against all past, present, and future direct and indirect parents, affiliates, subsidiaries, divisions, predecessors, successors, partners, joint venturers, affiliated organizations, shareholders, insurers, reinsurers and assigns of DEFENDANTS, and each of its past, present and future officers, commissioners, directors, members, trustees, agents, employees, attorneys, contractors, representatives, benefits plans sponsored or administered by DEFENDANTS, divisions, units, branches and any other persons or entities acting on their behalf except that PLAINTIFF Meia Burks shall waive and release any and all claims against DEFENDANTS accrued through the date of the COURT'S final approval of the SETTLEMENT AGREEMENT.

9.     CLASS COUNSEL represents that he has conducted a thorough investigation into the facts of the LITIGATION and has diligently pursued an investigation of CLASS MEMBERS' claims against DEFENDANTS. Based on his own independent investigation and evaluation, CLASS COUNSEL is of the opinion that the settlement with DEFENDANTS is fair, reasonable, and adequate and is in the best interest of the CLASS MEMBERS in light of all

known facts and circumstances, including the risks of significant delay, defenses asserted by DEFENDANTS, and numerous appellate issues.

10.    DEFENDANTS expressly deny any wrongdoing or any violation of state or federal law as alleged in the LITIGATION.   Nothing contained in this SETTLEMENT AGREEMENT shall be construed as an admission of any liability by DEFENDANTS, and all PARTIES agree not to offer this SETTLEMENT AGREEMENT as evidence or otherwise use it in any judicial or administrative proceeding, except that this Agreement may be introduced in any proceeding for the sole purpose of enforcing its terms.

11.    The PARTIES agree to withdraw any and all pending motions.

12.    The PARTIES agree to cooperate and take all steps necessary and appropriate to obtain preliminary and final approval of the terms of the settlement, to effectuate all aspects of this SETTLEMENT AGREEMENT, and to dismiss the LITIGATION with prejudice upon final approval of the settlement.

13.    The total payment under this SETTLEMENT AGREEMENT, including but not limited to SETTLEMENT PAYMENTS, ENHANCEMENT PAYMENT, attorneys' fees, costs, and expenses, and the costs of settlement and claim administration is $175,000.00 ("MAXIMUM GROSS SETTLEMENT AMOUNT").   SETTLEMENT PAYMENTS, as described in detail below, will be issued to those CLASS MEMBERS who do not return a timely OPT-OUT request.  Any amounts that are not distributed pursuant to this SETTLEMENT AGREEMENT shall be retained by DEFENDANTS.  METRO will issue to all members of the SETTLEMENT CLASS receiving settlement funds a form W-2 for all amounts paid as wages under this settlement and will issue a form 1099 for all amounts paid as penalties under this settlement.  All employee payroll taxes shall be paid from the MAXIMUM GROSS SETTLEMENT AMOUNT.

All employer payroll taxes shall be paid by DEFENDANTS.   Under no circumstances will DEFENDANTS be responsible for aggregate payments in excess of the MAXIMUM GROSS SETTLEMENT AMOUNT plus the employer share of payroll taxes on permitted claims hereunder.

**DEFINITIONS**

14.     "BAR DATE" refers to the date by which any CLASS MEMBER who wishes to exclude himself as a CLASS MEMBER must submit an OPT-OUT request, which date shall be no later than sixty (60) days after mailing of the CLASS NOTICE.

15.     "CAFA NOTICE" refers to the notice to be sent by DEFENDANTS to appropriate federal and state officials pursuant to the requirements of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b).

16.     "CLAIMANT" refers to a member of the SETTLEMENT CLASS or the authorized legal representative of such member of the SETTLEMENT CLASS who does not timely submit an OPT-OUT request.

17.     "CLAIMS PERIOD" refers to the period from August 13, 2007, through and including June 4, 2010.

18.     "CLASS COUNSEL" refers to Mark Potashnick, Weinhaus & Potashnick, 11500 Olive Blvd., Suite 133, St. Louis, MO  63141.

19.     "CLASS MEMBER" refers to individual members of the SETTLEMENT CLASS.

20.     "CLASS NOTICE" refers to the "Notice of Class Action, Settlement and Hearing" which will be mailed to CLASS MEMBERS substantially in the form as Exhibit 2.

21.     "CLASS REPRESENTATIVE" and "PLAINTIFF" refer to Meia Burks.

22.    "COURT" refers to the United States District Court for the Eastern District of Missouri.

23.    "DEFENDANTS" refers to The Bi-State Development Agency of the Missouri-Illinois Metropolitan District d/b/a Metro and S.M. Huber Enterprises, Inc. d/b/a Above All Personnel.

24.    "EFFECTIVE DATE" refers to the first date after all of the events and conditions set forth in Paragraphs 42-48 have been met or occurred.

25.    "ENHANCEMENT PAYMENT" refers to a $5,000.00 payment to Plaintiff Meia Burks for her services as CLASS REPRESENTATIVE.

26.    "FINAL APPROVAL HEARING" refers to the hearing contemplated by the PARTIES, at which the COURT will approve the settlement and make such other final rulings as are contemplated by this SETTLEMENT AGREEMENT.

27.    "FINAL APPROVAL ORDER" refers to the order of the COURT granting final approval of this SETTLEMENT AGREEMENT on the terms provided herein or as the same may be modified by subsequent mutual agreement of the PARTIES.

28.    "FINAL JUDGMENT" refers to the Judgment entered by the COURT in conjunction with the FINAL APPROVAL ORDER dismissing the LITIGATION with prejudice. The PARTIES shall submit an order of FINAL JUDGMENT setting forth the terms of this SETTLEMENT AGREEMENT, by incorporation or otherwise, for execution and entry by the COURT at the time of the FINAL APPROVAL HEARING or at such other time as the COURT deems appropriate.

29.    "SETTLEMENT CLASS" and "FINAL SETTLEMENT CLASS" refer to all CLASS MEMBERS who do not timely and validly exclude themselves in compliance with the OPT-OUT procedures set forth in this SETTLEMENT AGREEMENT.

30.    "LITIGATION" refers to the action filed by PLAINTIFF as set forth in Paragraph 5.

31.    "MAXIMUM GROSS SETTLEMENT AMOUNT" refers to the amount set forth herein at Paragraph 13.

32.    "OPT-OUT" refers to a CLASS MEMBER who has timely filed a request for exclusion as specified in Paragraph 61 herein.

33.    "OPT-OUT PERIOD" refers to the period beginning with the date CLASS NOTICE is first mailed to CLASS MEMBERS and ending sixty (60) days after the date of first mailing.

34.    "PARTIES" refers to the CLASS REPRESENTATIVE, the SETTLEMENT CLASS, and DEFENDANTS and, in the singular, refers to any of them, as the context makes apparent.

35.    "PRELIMINARY APPROVAL ORDER" refers to the order of the COURT granting preliminary approval of this SETTLEMENT AGREEMENT on the terms provided herein or as the same may be modified by subsequent mutual agreement of the PARTIES.

36.    "RELATED PERSONS" refers to DEFENDANTS and their past, present, and future direct and indirect parents, affiliates, subsidiaries, divisions, predecessors, successors, partners, joint venturers, affiliated organizations, shareholders, insurers, reinsurers and assigns, and each of its past, present and future officers, commissioners, directors, members, trustees,

agents, employees, attorneys, contractors, representatives, benefits plans sponsored or administered by DEFENDANTS, divisions, units, branches and any other persons or entities acting on their behalf.

37.    "RELEASED PERSONS" refers to DEFENDANTS and RELATED PERSONS.

38.    "SETTLEMENT AGREEMENT" refers to this Class Action Settlement Agreement.

39.    "SETTLEMENT PAYMENT" refers to the payment to which a CLAIMANT shall become entitled pursuant to this SETTLEMENT AGREEMENT, and as more fully set forth in Paragraph 52 below.

## CERTIFICATION OF THE SETTLEMENT CLASS
## FOR SETTLEMENT PURPOSES ONLY

40.    For settlement purposes only, the PARTIES agree that there shall be a SETTLEMENT CLASS, as defined in Paragraph 3.

41.    The settlement described in this SETTLEMENT AGREEMENT is contingent upon the approval and certification by the COURT of the SETTLEMENT CLASS for settlement purposes only.  DEFENDANTS do not waive, and instead expressly reserve their rights to challenge the propriety of class certification for any purpose as if this SETTLEMENT AGREEMENT had not been entered into by the PARTIES should the COURT not approve the SETTLEMENT AGREEMENT or should DEFENDANTS exercise their rights to terminate the SETTLEMENT AGREEMENT as described in Paragraph 74.  The PARTIES shall cooperate and present to the COURT for its consideration in connection with the proposed certification of the SETTLEMENT CLASS competent evidence, as may be requested by the COURT, under the applicable due process requirements and standards for class or collective action certification.

## SETTLEMENT APPROVAL PROCEDURE

The SETTLEMENT AGREEMENT requires the occurrence of all of the following events in Paragraphs 42-48:

42. Execution of the SETTLEMENT AGREEMENT by the PARTIES.

43. Submission of a joint motion to preliminarily approve settlement, approve and direct distribution of a class notice, certify the class for settlement purposes only, appoint class counsel and appoint class representative.

44. Entry of an Order by the COURT granting preliminary approval of the SETTLEMENT AGREEMENT, including conditional certification of the SETTLEMENT CLASS for settlement purposes only, appointment of CLASS COUNSEL, and appointment of the CLASS REPRESENTATIVE for the SETTLEMENT CLASS.

45. COURT approval of the method of distribution and the form and content of the CLASS NOTICE, attached as Exhibit 2.

46. Filing by CLASS COUNSEL, on or before the date of the FINAL APPROVAL HEARING, the CLASS COUNSEL'S declaration, in writing, that the CLASS NOTICE to the SETTLEMENT CLASS has been disseminated in accordance with the COURT'S order.

47. The CLASS NOTICE to the SETTLEMENT CLASS will be mailed by CLASS COUNSEL by first class mail to the most recent address known or reasonably determinable for each member of the SETTLEMENT CLASS within thirty (30) days after the COURT'S preliminary approval of this SETTLEMENT AGREEMENT. The CLASS COUNSEL will include one return envelope with the CLASS NOTICE addressed to METRO's COUNSEL. METRO's counsel will be obligated to file all OPT-OUT notices with the COURT.

48. Occurrence of the "EFFECTIVE DATE," which is defined as the date on which the judgment by the COURT finally approving this SETTLEMENT AGREEMENT (finding this

SETTLEMENT AGREEMENT to be a fair and reasonable settlement, and dismissing with prejudice the LITIGATION) is no longer appealable (the thirty-first day after service of notice of entry of judgment), or if an appeal has been filed, the date on which the appeal is final.

### SETTLEMENT PAYMENT AND CALCULATION OF CLAIMS

In consideration of the mutual covenants and promises set forth herein, the PARTIES agree, subject to the COURT'S approval, as follows:

49.     Upon approval by the Court of CLASS COUNSEL's claim for attorney's fees and costs, Defendants shall pay the sum of $58,333.33 plus costs incurred to CLASS COUNSEL in full and complete satisfaction of PLAINTIFF and CLASS COUNSEL'S claim for attorneys' fees and costs in the LITIGATION and pursuant to this SETTLEMENT AGREEMENT.

50.     Any amount not disbursed from the MAXIMUM GROSS SETTLEMENT AMOUNT shall be retained by METRO.

51.     Within 30 days of the EFFECTIVE DATE, Metro will distribute from the MAXIMUM GROSS SETTLEMENT AMOUNT the following payments:   (a) payment to CLASS COUNSEL for court-approved attorneys' fees, plus PLAINTIFF'S costs and expenses; (b) payment to CLAIMANTS the settlement amounts, less applicable taxes, deductions and attorney's fees; and (c) payment of the ENHANCEMENT PAYMENT of $5,000.00 to the CLASS REPRESENTATIVE .

52.     Following preliminary approval of this SETTLEMENT AGREEMENT, CLASS COUNSEL may petition the COURT for an award of attorneys' fees and costs in conjunction with the PARTIES' settlement.  Any such petition shall be filed no later than twenty-eight (28) days prior to the FINAL APPROVAL HEARING.  Any attorneys' fees and costs awarded in conjunction with the PARTIES' settlement shall be paid from the MAXIMUM GROSS SETTLEMENT AMOUNT and a total amount equal to all such attorney's fees and litigation

costs awarded shall reduce the quantity of the NET SETTLEMENT AMOUNT payable to CLASS MEMBERS on a pro rata basis calculated by dividing the total amount payable to each class member to the total amount payable to all class members (excluding the ENHANCEMENT PAYMENT). DEFENDANTS will not oppose any request by CLASS COUNSEL for an award of fees and costs that does not exceed 33 1/3% of the MAXIMUM GROSS SETTLEMENT AMOUNT plus litigation costs incurred. If the COURT rules that any amount requested by CLASS COUNSEL for attorneys' fees, expenses or costs is excessive and reduces the same, only the reduced amount will be paid by DEFENDANTS in lieu of the amount specified in Paragraph 49. CLASS COUNSEL will be issued an IRS Form 1099 for their award of attorneys' fees.

53.     Subject to preliminary COURT approval, in addition to any payment she will receive pursuant to Paragraph 55, PLAINTIFF will receive from the MAXIMUM GROSS SETTLEMENT AMOUNT an ENHANCEMENT PAYMENT for her services as CLASS REPRESENTATIVE in the amount of $5,000.00. PLAINTIFF will be issued an IRS Form 1099 in connection with this enhancement and no payroll taxes shall be deducted therefrom. The ENHANCEMENT PAYMENT shall come from the MAXIMUM GROSS SETTLEMENT AMOUNT. In exchange for this ENHANCEMENT PAYMENT, PLAINTIFF will be required to execute a mutually acceptable full and complete release of any and all claims, known and unknown, against the DEFENDANTS.

54.     The REVISED MAXIMUM GROSS SETTLEMENT AMOUNT shall be the MAXIMUM GROSS SETTLEMENT AMOUNT $175,000.00, minus fees paid or to be paid related to CLASS COUNSEL'S attorneys' fees, costs, and expenses, and the ENHANCEMENT PAYMENT $5,000.00.

55.     Each CLAIMANT shall receive a SETTLEMENT PAYMENT in accordance with the following:

(a) For each weekday that a CLAIMANT who was employed as a Reservation Clerk worked at Metro in such capacity during the CLASS PERIOD, such CLAIMANT will receive credit for 0.25 hours of additional work.

(b) For each weekday that a CLAIMANT who was employed as a Dispatcher worked at Metro in the Reservation Center during the CLASS PERIOD, such CLAIMANT will receive credit for 0.25 hours of additional work.

(c) For each weekday that a CLAIMANT who was employed as a Dispatcher worked at Metro in the Dispatch area, as opposed to the Reservation Center, during the CLASS PERIOD, such CLAIMANT will receive credit for 0.1498 hours of additional work.

(d) For each weekend day that a CLAIMANT who was employed as a Reservation Clerk worked at Metro in such capacity during the CLASS PERIOD, such CLAIMANT will receive credit for 0.18 hours of additional work.

(e) For each weekend day that a CLAIMANT who was employed as a Dispatcher worked at Metro during the CLASS PERIOD, such CLAIMANT will receive credit for 0.10 hours of additional work.

Provided, however, that a CLAIMANT shall only receive payment of settlement proceeds for full workweeks (defined as all workweeks excluding an employee's first and last workweek when the employee works less than five days during either of those weeks) where CLAIMANT worked at least 39 hours during such work week exclusive of the additional time referenced above.  Except, that no CLAIMANT shall be deemed to have worked less than 39 hours per week for more than 35% of the full workweeks that such CLAIMANT worked at Metro.  Thus,

(i) if a CLAIMANT worked as a Reservation Clerk at Metro during one hundred full workweeks during the CLASS PERIOD, but did not work 39 or more hours per week during fifty of those weeks, such CLAIMANT will still be paid a settlement amount based on the credit he or she receives as stated above for the days actually worked during 65 of the weeks worked, and (ii) if a CLAIMANT worked as a Reservation Clerk at Metro during one hundred full workweeks during the CLASS PERIOD, but did not work 39 or more hours per week during only 20 of those weeks, such CLAIMANT will be paid a settlement amount based on the credit he or she receives as stated above for the days actually worked during the 80 weeks that such CLAIMANT actually worked at least 39 hours per work week. The settlement payments will be based on overtime pay (1.5 times an employee's regular pay rate) calculated using regular pay rates of $12.00 per hour for Reservation Clerks and $17.80 per hour for Dispatchers. The PARTIES will file with the Court at least twenty days before the hearing for final approval of the settlement a spreadsheet titled "Claimants' Damages" that will identify the settlement amounts to be received by each CLAIMANT who does not opt-out of this settlement. The spreadsheet will state the amount of additional gross wages to be paid per this Agreement, an equal amount of liquidated damages, and that employee's pro rata share of attorney's fees and costs awarded, unless that employee opts out of the settlement in accordance with this Agreement or his or her share is adjusted as set forth in paragraph 55 of this Agreement. To the extent the number of CLAIMANTS, as multiplied by their SETTLEMENT PAYMENT exceeds the MAXIMUM NET SETTLEMENT AMOUNT, each CLAIMANT'S payment will be proportionally reduced so that the MAXIMUM GROSS SETTLEMENT of $175,000.00 is not exceeded.

56.     During the OPT-OUT period, upon presentation of letters of administration with respect to an estate of a deceased, disabled or incompetent CLASS MEMBER or other sufficient

evidence of personal representation, the DEFENDANTS shall treat the estate administrator as the CLASS MEMBER.

57.     If the total payments are less than the MAXIMUM GROSS SETTLEMENT AMOUNT then the excess of the MAXIMUM GROSS SETTLEMENT AMOUNT shall be retained by Metro.

## ALLOCATION AND TAX TREATMENT

58.     The PARTIES agree that fifty percent (50%) of the amount distributed to each CLAIMANT will be considered damages for lost wages and will be reported as such on an IRS Form W-2. Fifty percent (50%) will be considered penalties and will be reported as such on an IRS Form 1099.

## DISTRIBUTION OF SETTLEMENT PROCEEDS

59.     DEFENDANT Metro shall be responsible for:

(a)     in consultation with the other parties, calculating the individualized SETTLEMENT PAYMENTS for members of the SETTLEMENT CLASS, based on the spreadsheet titled "Claimants' Damages" that will be filed with the Court at least twenty days before final approval of the settlement and distributing the SETTLEMENT PAYMENTS to the members of the SETTLEMENT CLASS as specified herein.

(b)     mailing the settlement checks to CLAIMANTS;

(c)     referring to CLASS COUNSEL all inquiries by members of the SETTLEMENT CLASS regarding matters not within Metro's duties specified herein and contemporaneously informing the Parties' counsel of all such inquiries; and

(d)     maintaining adequate records of its activities, including the calculation and distribution of the SETTLEMENT PAYMENTS.

14

60.     DEFENDANTS will provide CLASS COUNSEL with records reasonably necessary for CLASS COUNSEL to verify the accuracy of DEFENDANTS' calculations regarding the SETTLEMENT PAYMENTS to be made to the CLASS MEMBERS.

### NOTICE TO THE SETTLEMENT CLASS ("NOTICE PROVISION")

61.     Within thirty (30) calendar days of the entering of the PRELIMINARY APPROVAL ORDER, the CLASS COUNSEL shall send a CLASS NOTICE substantially in the form attached as Exhibit 2 to CLASS MEMBERS.

62.     At least twenty (20) calendar days before the FINAL APPROVAL HEARING, CLASS COUNSEL shall provide the COURT a declaration by the CLASS COUNSEL of due diligence and proof of mailing with regard to the mailing of the CLASS NOTICE.

63.     The CLASS NOTICE will apprise each CLASS MEMBER of his or her estimated maximum and minimum share of the MAXIMUM GROSS SETTLEMENT AMOUNT based on the formula described in Paragraph 52.

64.     CLASS MEMBERS may OPT-OUT of the SETTLEMENT CLASS by mailing to METRO's counsel a written statement expressing their desire to be excluded from the SETTLEMENT CLASS including their name (and former names, if any), current address, telephone number and Social Security number and the dates they worked for either Defendant. Any such OPT-OUT written statement must be postmarked not more than sixty (60) calendar days after the date CLASS NOTICE was first mailed to the CLASS MEMBERS. Requests to OPT-OUT that do not include all required information, or that are not postmarked by the BAR DATE will be deemed null, void and ineffective. Persons who are eligible to and do submit valid and timely requests to OPT-OUT of the CLASS will not participate in the SETTLEMENT CLASS and will not be bound by the terms of the SETTLEMENT AGREEMENT, if it is

approved, or the FINAL JUDGMENT in this LITIGATION.  Counsel for METRO shall file all such OPT-OUT notices, with the social security numbers redacted, with the COURT.

## DISPUTE PROCESS

65.    If a CLASS MEMBER does not wish to OPT-OUT or challenge DEFENDANTS' records as to the dates and / or hours worked for either Defendant as a Reservation Clerk and/or Dispatcher and appropriate payments, the CLASS MEMBER need do nothing except timely endorse and cash or deposit the settlement payment check when received.

66.    If any CLASS MEMBER wishes to challenge DEFENDANTS' records regarding the dates and / or hours he or she worked for one or both DEFENDANTS and/or the method for calculation of his or her payment under the SETTLEMENT AGREEMENT, the CLASS MEMBER must submit a written, signed declaration to the COURT at the address provided in the CLASS NOTICE with copies mailed to CLASS COUNSEL and DEFENDANTS' COUNSEL on or before January 11, 2011.  No dispute will be timely if postmarked after January 11, 2011.  If counsel for the parties is unable to reach agreement regarding resolution of such CLASS MEMBER'S objection, such objection will be presented to the Court for a final and binding determination without hearing or right of appeal.

67.    CLASS MEMBERS will have ninety (90) calendar days after mailing by Metro to cash their SETTLEMENT PAYMENT checks.  If any CLASS MEMBERS do not cash their SETTLEMENT PAYMENT checks within that ninety-day period, their SETTLEMENT PAYMENT checks will be void and a stop-pay will be placed on the checks.  In such event, those CLASS MEMBERS will be deemed to have waived irrevocably any right in or claim to a settlement share, but the SETTLEMENT AGREEMENT nevertheless will be binding upon them.

## RELEASE BY THE SETTLEMENT CLASS

68.     Upon the final approval by the COURT of the SETTLEMENT AGREEMENT, and except as to such rights or claims as may be created by the SETTLEMENT AGREEMENT, all members of the SETTLEMENT CLASS fully release, and discharge DEFENDANTS and all past, present and future direct and indirect parents, affiliates, subsidiaries; divisions, predecessors, successors, partners, joint venturers, affiliated organizations, shareholders, insurers, reinsuerets and assigns, and each of its past, present, and future officers, commissioners, directors, members, trustees, agents, employees, attorneys, contractors, representatives, benefits plan sponsored or administered by DEFENDANTS, divisions, units, branches, and any other persons or entities acting on their behalf, from any and all claims, debts, liabilities; demands, obligations, penalties, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action of whatever kind or nature accrued, whether known or unknown, that were alleged or that reasonably could have arisen out of the same facts alleged in the LITIGATION, including but not limited to any claims under federal or state law for unpaid wages, unpaid overtime, liquidated damages, punitive damages, unlawful deductions from wages, miscalculation of wage rates, record-keeping violations, unjust enrichment, breach of implied or express contracts, retaliation, quantum meruit, and promissory estoppel up to and including the date of FINAL APPROVAL of this SETTLEMENT AGREEMENT. This Release shall include, without limitation, all claims that were alleged or that reasonably could have arisen out of the same facts alleged in the LITIGATION under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., the Missouri Wage Payment Laws, Ch. 290 RSMo. and/or theories of breach of contract, quantum meruit and unjust enrichment.

69.     All checks issued to CLASS MEMBERS shall contain, on the back of the check, the following limited endorsement: "By endorsing this check, I release The Bi-State Development Agency of the Missouri-Illinois Metropolitan District d/b/a Metro and S.M. Huber Enterprises, Inc., d/b/a Above All Personnel from all claims, known or unknown, under the Fair Labor Standards Act or any state or local wage-and-hour law, for wages, for overtime wages, or for related damages or penalties which accrued up to and including the date of the Court's final approval of the settlement agreement in Burks v. Bi-State, et al., Case No. 4:09CV01302 (MLM)." Upon the final approval by the COURT of this SETTLEMENT AGREEMENT, the CLASS REPRESENTATIVE will execute a complete release as to all DEFENDANTS, including a confidentiality provision, substantially in the form attached as Exhibit 3.

## DUTIES OF THE PARTIES BEFORE COURT APPROVAL

70.     The PARTIES shall promptly submit this SETTLEMENT AGREEMENT to the United States District Court for the Eastern District of Missouri in support of the Joint Motion for Preliminary Approval for determination by the COURT as to its fairness, adequacy, and reasonableness and apply for the entry of a preliminary order substantially in the following form:

(a)     Scheduling a fairness hearing on the question of whether the proposed settlement should be finally approved as fair, reasonable and adequate as to the members of the SETTLEMENT CLASS;

(b)     Approving as to form and content of the proposed CLASS NOTICE;

(c)     Directing the mailing of the CLASS NOTICE by first class mail to the SETTLEMENT CLASS;

(d)     Preliminarily approving the settlement; and

(e)     Preliminarily certifying the class for purposes of settlement.

## DUTIES OF THE PARTIES FOLLOWING FINAL COURT APPROVAL

71.     Following preliminary approval by the COURT of this SETTLEMENT AGREEMENT, DEFENDANTS' COUNSEL will submit a proposed final order and judgment:

(a)     Approving the SETTLEMENT AGREEMENT, adjudging the terms thereof to be fair, reasonable and adequate, and directing consummation of its terms and provisions.

(b)     Certifying the SETTLEMENT CLASS for purposes of settlement hereunder only.

(c)     Dismissing the LITIGATION on the merits and with prejudice so as to permanently bar all CLASS MEMBERS who do not opt out from prosecuting against DEFENDANTS and any RELEASED PERSONS for claims waived and released herein.

(d)     Providing that the promises, agreements, obligations, undertakings, representations, certifications, and warranties set out herein shall survive the closing of this SETTLEMENT AGREEMENT, the releases contained herein, and the judgment of dismissal to be entered in the LITIGATION TERMINATING THE SETTLEMENT AGREEMENT.

Defendants shall also request that the Court declare that the pay practices of DEFENDANTS METRO and ABOVE ALL PERSONNEL with respect to Reservation Clerks and Dispatchers currently comply with the Fair Labor Standards Act and the Missouri Wage Payment Laws with respect to the performance of preliminary and postliminary work and that Defendants from and after June 5, 2010, compensate such employees from the time they start performing preliminary or preparatory duties, including without limitation, logging into computer and phone systems, to the time they complete postliminary or other end-of-the shift duties, including, without limitation, logging out of computer and phone systems, completing

calls and completing the proofing of call reservation reports. PLAINTIFFS and CLASS COUNSEL shall take no position regarding such request by DEFENDANTS.

72.   If the COURT does not approve any material condition of this SETTLEMENT AGREEMENT that affects a fundamental change to the terms of this settlement hereunder, the entire SETTLEMENT AGREEMENT will be voidable and unenforceable. A material condition or fundamental change of this SETTLEMENT AGREEMENT shall include; but not be limited to, DEFENDANTS having to pay a MAXIMUM GROSS SETTLEMENT AMOUNT in excess of $175,000.00.

73.   DEFENDANTS may withdraw from and terminate this SETTLEMENT AGREEMENT should fifteen percent (15%) or more of the CLASS MEMBERS opt-out of the SETTLEMENT CLASS, by providing notice to the other side and to the COURT within seven (7) calendar days after DEFENDANTS receive notice that 15% or more of the CLASS MEMBERS opted-out of the settlement.

74.   The PARTIES agree not to encourage any CLASS MEMBER or group of CLASS MEMBERS to OPT-OUT of the settlement.

75.   DEFENDANTS may terminate this SETTLEMENT AGREEMENT as provided in Paragraph 73 by giving notice, in writing, to CLASS COUNSEL and to the COURT at any time before final approval of the SETTLEMENT AGREEMENT by the COURT.

76.   The PARTIES agree that, in the event the COURT does not grant preliminary or final approval to the Class Settlement, or if DEFENDANTS lawfully exercise their option to terminate the SETTLEMENT AGREEMENT, DEFENDANTS' agreement to this settlement in principle will not preclude it from contesting and opposing any past or future motion of PLAINTIFF for class certification under Rule 23 or the FLSA on any basis.

## EFFECT OF TERMINATION

If the SETTLEMENT AGREEMENT is terminated:

77.   The SETTLEMENT AGREEMENT shall be terminated and shall have no force or effect, and no PARTY shall be bound by any of its terms.

78.   DEFENDANTS shall have no obligation to make any payments to any PARTY, CLASS MEMBER or attorney.

79.   The PRELIMINARY APPROVAL ORDER, FINAL APPROVAL ORDER and judgment, including any order of class certification, shall be vacated.

80.   The SETTLEMENT AGREEMENT and all negotiations, statements and proceedings relating thereto shall be without prejudice to the rights of any of the PARTIES, all of whom shall be restored to their respective positions in the LITIGATION prior to the settlement.

81.   Neither this SETTLEMENT AGREEMENT, nor any ancillary documents, actions, statements or filings in furtherance of settlement (including all matters associated with the mediation) shall be admissible or offered into evidence in the LITIGATION or any other action for any purpose whatsoever.

## PARTIES' AUTHORITY

82.   The signatories represent that they are fully authorized to enter into this SETTLEMENT AGREEMENT and bind the PARTIES to its terms and conditions.

## MUTUAL FULL COOPERATION

83.   The PARTIES agree to fully cooperate with each other to accomplish the terms of this SETTLEMENT AGREEMENT, including but not limited to, execution of such documents as may reasonably be necessary to implement the terms of this SETTLEMENT AGREEMENT. The PARTIES to this SETTLEMENT AGREEMENT shall use their best efforts, including all

efforts contemplated by this SETTLEMENT AGREEMENT and any other efforts that may become necessary by order of the COURT, or otherwise, to effectuate this SETTLEMENT AGREEMENT. As soon as practicable after execution of this SETTLEMENT AGREEMENT, the PARTIES shall take all necessary steps to secure the COURTS' final approval of this SETTLEMENT AGREEMENT.

## NO ADMISSION OF LIABILITY

84.     Nothing contained herein, nor the consummation of this SETTLEMENT AGREEMENT, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of DEFENDANTS. The PARTIES acknowledge that DEFENDANTS deny the material allegations stated in the Complaint and that this settlement does not alter DEFENDANTS' denial of such allegations. Each of the PARTIES has entered into this SETTLEMENT AGREEMENT with the intention to avoid further disputes and litigation with the attendant inconvenience and expense. This SETTLEMENT AGREEMENT is a settlement document and shall be inadmissible in evidence in any proceeding. The preceding sentence shall not apply to an action or proceeding to approve, interpret, or enforce this SETTLEMENT AGREEMENT.

## ENFORCEMENT OF THE SETTLEMENT AGREEMENT

85.     In the event that one or more of the PARTIES to this SETTLEMENT AGREEMENT institutes any legal action, arbitration, or other proceeding against any other PARTY or PARTIES to enforce the provisions of this SETTLEMENT AGREEMENT or to declare rights and/or obligations under this SETTLEMENT AGREEMENT, the successful PARTY or PARTIES shall be entitled to recover from the unsuccessful PARTY or PARTIES reasonable attorneys' fees and costs, including expert witness fees incurred in connection with any enforcement actions.

## NOTICES

86.   Unless otherwise specifically provided, all notices, demands or other communications in connection with this SETTLEMENT AGREEMENT shall be: (1) in writing; (2) deemed given on the third business day after mailing; and (3) sent via United States registered or certified mail, return receipt requested, addressed as follows:

To CLASS MEMBERS:

Mark Potashnick
Weinhaus & Potashnick
11500 Olive Blvd., Suite 133
St. Louis, MO  63141

To DEFENDANT Metro:

James C. Hetlage
Lashly & Baer, P.C.
714 Locust Street
St. Louis, MO 63101

To DEFENDANT Above All Personnel:

Michael F. Harris
Harris, Dowell, Fisher & Harris, LC
15400 S. Outer Forty Dr., Suite 202
Chesterfield, MO 63017

## CONSTRUCTION AND INTERPRETATION

87.   The PARTIES agree that the terms and conditions of this SETTLEMENT AGREEMENT are the result of lengthy, intensive arms-length negotiations between the PARTIES and that this SETTLEMENT AGREEMENT shall not be construed in favor of or against any of the PARTIES by reason of their participation in the drafting of this SETTLEMENT AGREEMENT.

88.   Paragraph titles are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this SETTLEMENT AGREEMENT or any

of its provisions.   Each term of this SETTLEMENT AGREEMENT is contractual and not merely a recital.

89.     This SETTLEMENT AGREEMENT shall be subject to and governed by the laws of the State of Missouri and subject to the continuing jurisdiction of the United States District Court for the Eastern District of Missouri.

## MODIFICATION

90.     This SETTLEMENT AGREEMENT may not be changed, altered, or modified, except in writing and signed by counsel, for the PARTIES, and approved by the COURT.   This SETTLEMENT AGREEMENT may not be discharged except by performance in accordance with its terms or by a writing signed by counsel for the PARTIES.

## INTEGRATION CLAUSE

91.     This SETTLEMENT AGREEMENT contains the entire agreement between the PARTIES relating to any and all matters addressed in the SETTLEMENT AGREEMENT (including settlement of the LITIGATION), and all prior or contemporaneous, agreements, understandings, representations, and statements, whether oral or written and whether by a PARTY or such PARTY'S legal counsel, with respect to such matters are extinguished.   No rights hereunder may be waived or modified except in a writing signed by all PARTIES.

## MEDIA AND CONFIDENTIALITY OBLIGATIONS

92.     The attorneys and CLASS REPRESENTATIVE agree that to the extent they issue a media statement, are contacted by the media, or otherwise disclose information with respect to this SETTLEMENT AGREEMENT and underlying LITIGATION, only the attached media statement (attached as Exhibit 4) may be used and only used after the COURT'S final approval of the Settlement.   Prior to that time, the attorneys and CLASS REPRESENTATIVE agree to keep the terms of their Settlement confidential.   The agreed media statement shall be the only

statements to the media or any other non-party about the SETTLEMENT AGREEMENT and LITIGATION by the attorneys and CLASS REPRESENTATIVE, except as otherwise required by law.

93.   Any further statements to the media by the attorneys and CLASS REPRESENTATIVE must be provided to, and approved by, the opposing PARTY in advance of the issuance to the media.   Therefore, the attorneys and CLASS REPRESENTATIVE agree that they may not issue or release statements to the media about the agreement without securing prior advance approval from the opposing PARTY.

## BINDING ON ASSIGNS

94.   This SETTLEMENT AGREEMENT shall be binding upon and inure to the benefit of the PARTIES and their respective heirs, trustees, executors, administrators, successors and assigns.

## CLASS SIGNATORIES

95.   It is agreed that it is impossible or impractical to have each member of the class execute this SETTLEMENT AGREEMENT.   The Notice will advise all CLASS MEMBERS of the binding nature of the release and such shall have the same force and effect as if each member of the class executed this SETTLEMENT AGREEMENT.

## COUNTERPARTS

96.   This SETTLEMENT AGREEMENT may be executed in counterparts; and when each PARTY has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one SETTLEMENT AGREEMENT, which shall be binding upon and effective as to all PARTIES.

## DISPUTES RELATED TO THE SETTLEMENT AGREEMENT

97.    Any disputes related to the interpretation of the terms of this SETTLEMENT AGREEMENT that arise prior to entry of FINAL JUDGMENT shall be referred to Richard Sher for resolution. The fees and costs for time spent by Mr. Sher resolving such disputes shall be paid by the non-prevailing PARTY, as determined by Mr. Sher. If Mr. Sher determines there is not a prevailing PARTY, Plaintiff shall pay 50% of Mr. Sher's fees and costs and the Defendants shall collectively pay 50% of Mr. Sher's fees and costs. Any party that does not have any stake in the resolution of the dispute or that elects to abstain from the dispute resolution proceeding shall not be responsible for any portion of Mr. Sher's fees and costs.

IN WITNESS WHEREOF, the undersigned have duly executed this SETTLEMENT AGREEMENT as of the date indicated below:

**MEIA BURKS**

**THE BI-STATE DEVELOPMENT AGENCY OF THE MISSOURI-ILLINOIS METROPOLITAN DISTRICT d/b/a METRO**

John M. Nations
President and CEO

Date: _10·23·10_

Date: _____

**S.M. HUBER ENTERPRISES, INC. d/b/a ABOVE ALL PERSONNEL**

Sue Huber
President

Date: _____

26

## DISPUTES RELATED TO THE SETTLEMENT AGREEMENT

97.    Any disputes related to the interpretation of the terms of this SETTLEMENT AGREEMENT that arise prior to entry of FINAL JUDGMENT shall be referred to Richard Sher for resolution.  The fees and costs for time spent by Mr. Sher resolving such disputes shall be paid by the non-prevailing PARTY, as determined by Mr. Sher.  If Mr. Sher determines there is not a prevailing PARTY, Plaintiff shall pay 50% of Mr. Sher's fees and costs and the Defendants shall collectively pay 50% of Mr. Sher's fees and costs.  Any party that does not have any stake in the resolution of the dispute or that elects to abstain from the dispute resolution proceeding shall not be responsible for any portion of Mr. Sher's fees and costs.

IN WITNESS WHEREOF, the undersigned have duly executed this SETTLEMENT AGREEMENT as of the date indicated below:

**MEIA BURKS**

**THE BI-STATE DEVELOPMENT AGENCY OF THE MISSOURI-ILLINOIS METROPOLITAN DISTRICT d/b/a METRO**

_____

John M. Nations
President and CEO

Date: _____

Date: _Oct. 21, 2010_

**S.M. HUBER ENTERPRISES, INC. d/b/a ABOVE ALL PERSONNEL**

_____

Sue Huber
President

Date: _____

26

**DISPUTES RELATED TO THE SETTLEMENT AGREEMENT**

97.    Any disputes related to the interpretation of the terms of this SETTLEMENT

AGREEMENT that arise prior to entry of FINAL JUDGMENT shall be referred to Richard Sher

for resolution.  The fees and costs for time spent by Mr. Sher resolving such disputes shall be

paid by the non-prevailing PARTY, as determined by Mr. Sher.  If Mr. Sher determines there is

not a prevailing PARTY, Plaintiff shall pay 50% of Mr. Sher's fees and costs and the Defendants

shall collectively pay 50% of Mr. Sher's fees and costs.  Any party that does not have any stake

in the resolution of the dispute or that elects to abstain from the dispute resolution proceeding

shall not be responsible for any portion of Mr. Sher's fees and costs.

IN WITNESS WHEREOF, the undersigned have duly executed this SETTLEMENT

AGREEMENT as of the date indicated below:

**MEIA BURKS**                                    **THE BI-STATE DEVELOPMENT**
                                                  **AGENCY OF THE MISSOURI-ILLINOIS**
                                                  **METROPOLITAN DISTRICT d/b/a**
                                                  **METRO**

_____                  _____
                                                  John M. Nations
                                                  President and CEO

Date: _____                    Date: _____


                                                  **S.M. HUBER ENTERPRISES, INC. d/b/a**
                                                  **ABOVE ALL PERSONNEL**

                                                  _Susan M. Huber, Pres._
                                                  Sue Huber
                                                  President

                                                  Date: _____10/25/2010_____

26

Mark Potashnick,                #35970
Weinhaus & Potashnick
11500 Olive Blvd., Suite 133
St. Louis, MO 63141
(314) 997-9150 ext. 2

Class Counsel

James C. Hetlage,              #3391
Lashly & Baer, P.C.
714 Locust Street
St. Louis, MO 63101
(314) 621-2939

Attorneys for Defendant Metro

Michael F. Harris,             #3330
Harris, Dowell, Fisher & Harris, LC
15400 S. Outer Forty Dr., Suite 202
Chesterfield, MO 63017
(636) 532-0300

Attorneys for Defendant Above All Personnel

27

|  |  |
|---|---|
| Mark Potashnick,　　　　#35970 | /s/ James C. Hetlage |
| Weinhaus &Potashnick | James C. Hetlage,　　　　#3391 |
| 11500 Olive Blvd., Suite 133 | Lashly & Baer, P.C. |
| St. Louis, MO 63141 | 714 Locust Street |
| (314) 997-9150 ext. 2 | St. Louis, MO 63101 |
|  | (314) 621-2939 |
| Class Counsel | Attorneys for Defendant Metro |

_/s/ Michael F. Harris_

Michael F. Harris,　　　　#3330
Harris, Dowell, Fisher & Harris, LC
15400 S. Outer Forty Dr., Suite 202
Chesterfield, MO 63017
(636) 532-0300

Attorneys for Defendant Above All Personnel

EXHIBIT 1

| Name | Job Title |
|------|-----------|
| AKERS, MARK | Paratransit Dispatcher |
| ANDERSON, LYNN | Reservation Clerk |
| BAILEY, NICKO | Paratransit Dispatcher/Reservation Clerk |
| BALL , LOUISE | Reservation Clerk |
| BAREITER, LISA | Reservation Clerk |
| BAUMANN, ANTOTHY | Reservation Clerk |
| BELL, CARLA | Reservation Clerk |
| BLACK, JOEL | Reservation Clerk |
| BREWINGTON, BRENDA | Reservation Clerk |
| BROWN, THERESA | Reservation Clerk |
| BRYSON, JASON | Reservation Clerk |
| BUCK, CHANTAY | Reservation Clerk |
| BURKS, MEIA | Reservation Clerk |
| CHAMBERS, PAMELA | Paratransit Dispatcher/Reservation Clerk |
| CHAPMAN, ANDREA | Paratransit Dispatcher |
| CHATMAN, FELICE | Reservation Clerk |
| CLAYTON, CLIFFORD | Paratransit Dispatcher/Reservation Clerk |
| COOPER, CARLETTIA | Reservation Clerk |
| COOPER, CATHY | Reservation Clerk |
| COX, MICHAEL | Reservation Clerk |
| CREIGHTON, MANDA | Reservation Clerk |
| DARNELL, ROBERT | Reservation Clerk |
| DAVIS, JENNIFER | Reservation Clerk |
| DAVIS, STEVEN | Reservation Clerk |
| DAWSON, CURT | Reservation Clerk |
| DEASE, ANTOINIA | Reservation Clerk |
| DOWNING, CHERIE | Reservation Clerk |
| DOWNS, UVONNE | Reservation Clerk |
| DUNN, ZACH | Reservation Clerk |
| EDWARDS, JENNIFER | Reservation Clerk |
| ELDRIDGE-COLE, SHONDA | Reservation Clerk |
| EWELL, TERESA | Paratransit Dispatcher |
| GOECKNER, ROBERT | Reservation Clerk |
| GRAHAM, SHANNON | Reservation Clerk |
| GRAY, KATHRYN | Reservation Clerk |
| HANKINS, MICHAEL | Reservation Clerk |
| HENSON, TERRI | Reservation Clerk |
| HEXTER, ANNA | Reservation Clerk |
| HOLLINGSWORTH, AUBRY | Reservation Clerk |
| HOWE, JEFFREY | Paratransit Dispatcher |
| HUNT, ANGEL | Reservation Clerk |

| | |
|---|---|
| JACKOSKI, REGINA | Reservation Clerk |
| JOHNSON, JESSIE | Reservation Clerk |
| JURCZYK, THERESA | Reservation Clerk |
| KILLENS, KAREN | Reservation Clerk |
| KRAZER, KEVIN | Paratransit Dispatcher |
| LAY, BARBARA | Reservation Clerk |
| LINCK, JEANNETTE | Reservation Clerk |
| LODES, JOHN | Reservation Clerk |
| LONGSHORE, MICHELLE | Reservation Clerk |
| LOVE, ANTWAN | Reservation Clerk |
| LOVELESS, PARKER | Paratransit Dispatcher/Reservation Clerk |
| LYNCH, KENNETH | Paratransit Dispatcher |
| McNEAL, SHARON | Reservation Clerk |
| MECHEM, PAUL | Paratransit Dispatcher |
| MOORE, VERCHELL | Reservation Clerk |
| MOSER, JOAN | Reservation Clerk |
| MURRAY, SHAUN | Paratransit Dispatcher/Reservation Clerk |
| OLDANI, MICHAEL | Reservation Clerk |
| OMALLEY, LORA | Reservation Clerk |
| OUTLAW, GIA | Reservation Clerk |
| PIERSON, STEPHANIE | Reservation Clerk |
| PORTER, JANICE | Reservation Clerk |
| RICHARDSON, PAULA (deceased) | Reservation Clerk |
| ROBINSON, ROGER | Reservation Clerk |
| ROGERS, DAVID | Reservation Clerk |
| ROTHSCHILD, PEGGY | Paratransit Dispatcher |
| SAMM, LAURA | Reservation Clerk |
| SCOTT, MAMON | Paratransit Dispatcher |
| SENIOUR, MATTHEW | Reservation Clerk |
| SIEMER, ERIN | Reservation Clerk |
| STANDRIDGE, MARK | Reservation Clerk |
| STEWART, TIMOTHY | Paratransit Dispatcher/Reservation Clerk |
| STITH, SHARONDA | Reservation Clerk |
| STRAUSSNER, TORI | Reservation Clerk |
| STUBITS, CINDY | Paratransit Dispatcher/Reservation Clerk |
| THOMPSON, KARILYN | Reservation Clerk |
| TUTTOLOMONDO, DIEGO | Reservation Clerk |
| VICKREY, NICOLE | Reservation Clerk |
| VINYARD, MARY | Paratransit Dispatcher |
| VITATOE, DAVID | Reservation Clerk |
| VUKOMANOVIC, IVO | Paratransit Dispatcher |
| WAGNER, NANCY | Reservation Clerk |
| WARREN, KURRIE | Reservation Clerk |
| WEBSTER, ELOISE | Paratransit Dispatcher |
| WHEELER-CARTER, BRENDA | Reservation Clerk |

| WILLIS, SHARON | Reservation Clerk |
| WYRICK, ANNA | Reservation Clerk |

EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MEIA BURKS, individually and<br>on behalf of others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | CASE NO. 4:09CV1302 (MLM) |
| BI-STATE DEVELOPMENT AGENCY | ) | |
| OF THE MISSOURI-ILLINOIS METRO- | ) | |
| POLITAN DISTRICT d/b/a "METRO" | ) | |
| and S.M. HUBER ENTERPRISES, INC. | ) | |
| d/b/a "ABOVE ALL PERSONNEL," | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF SETTLEMENT OF CLASS AND COLLECTIVE ACTION WAGE AND
HOUR CLAIMS AND HEARING**

**PLEASE READ CAREFULLY**

**Why is this notice being sent and what is this case about?**

This notice is to inform you of the preliminary certification of a class and collective action in the case entitled Meia Burks v. Bi-State Development Agency of the Missouri-Illinois Metropolitan District d/b/a "Metro" and S.M. Huber Enterprises, Inc. d/b/a Above All Personnel (the "Litigation") pending in the United States District Court for the Eastern District of Missouri, Eastern Division, the settlement of the Litigation and the scheduling of a Court Hearing for the final approval of the settlement of the Litigation. The Plaintiff alleges that she and other current and former employees of Metro and Above All Personnel who worked as non-exempt Reservation Clerks and Dispatchers at Metro's Call-A-Ride Division between August 13, 2007, and June 4, 2010 (the "Class Plaintiffs") have not been properly compensated for work-related activities performed prior to their scheduled shift time, for work-related activities performed after their scheduled shift time, and for work-related activities performed during lunch breaks. Plaintiff seeks unpaid overtime compensation and liquidated damages on behalf of herself and other Class Plaintiffs. Metro and Above All Personnel (collectively, "Defendants") deny Plaintiff's allegations in their entirety and assert that their pay practices with respect to Class Plaintiffs comply with all legal requirements.

The Parties engaged in extensive settlement discussions before a neutral third-party mediator, Richard Sher. As a result of these settlement negotiations and mediation, the Parties

1

entered into a Settlement Agreement to settle the claims raised by Plaintiff Meia Burks on behalf of herself and the Settlement Class.

The Court has granted preliminary approval of the settlement and has scheduled a hearing on January 31, 2011, at 9:30 a.m. at the United States District Court, Eastern District of Missouri, Thomas F. Eagleton Courthouse, 111 S. 10th Street, Courtroom 13-South, St. Louis, Missouri 63102 to determine whether to grant final approval.

## Who is affected by the proposed settlement?

The parties proposed settlement affects the following group (collectively, "Settlement Class"). You are receiving this notice because you belong to this group, which consists of all persons who worked for Metro or Above All Personnel as non-exempt Reservation Clerks or Dispatchers at Metro's Call-A-Ride Division in the State of Missouri during the period from August 13, 2007, through June 4, 2010.

## What are the terms of the proposed settlement?

In consideration for settlement and a release of all wage and hour claims of the Settlement Class against Defendants as set forth below, Defendants agree to make payments to members of the Settlement Class who do not submit a timely or valid request to exclude themselves from the Settlement Class (the "Claimants").

Under the Settlement Agreement, Defendants will set aside the aggregate amount of $175,000 upon preliminary approval of the settlement for purposes of paying certain settlement amounts under the Settlement Agreement. The aggregate settlement amount is designed to cover all payments to class members, as well as attorneys' fees, litigation costs incurred by Class Counsel, and an enhancement payment to the named Plaintiff who took the risk in bringing this Litigation, took a lead role in it, and assisted in its resolution. Any amounts remaining from the aggregate settlement amount shall be retained by Defendants.

Each Claimant will receive a payment based on the following:

(a)    For each weekday that a Claimant who was employed as a Reservation Clerk worked at Metro in such capacity during the Class Period, such Claimant will receive credit for 0.25 hours of additional work;

(b)    For each weekday that a Claimant who was employed as a Dispatcher worked at Metro in the Reservation Center during the Class Period, such Claimant will receive credit for 0.25 hours of additional work;

(c)    For each weekday that a Claimant who was employed as a Dispatcher worked at Metro in the Dispatch area, as opposed to the Reservation Center, during the Class Period, such Claimant will receive credit for 0.1498 hours of additional work;

(d)     For each weekend day that a Claimant who was employed as a Reservation Clerk worked at Metro in such capacity during the Class Period, such Claimant will receive credit for 0.18 hours of additional work;

(e)     For each weekend day that a Claimant who was employed as a Dispatcher worked at Metro during the Class Period, such Claimant will receive credit for 0.10 hours of additional work.

Provided, however, that each Claimant shall only receive payment of settlement proceeds for weeks where Claimant worked at least 39 hours during such work week exclusive of the additional time referenced above.  Except, that no Claimant shall be deemed to have worked less than 39 hours per week for more than 35% of the full workweeks (defined as all workweeks excluding an employee's first and last workweek when the employee works less than five days during either of those weeks) that such Claimant worked at Metro during the Class period.  Thus, (i) if a Claimant worked as a Reservation Clerk at Metro during one hundred full workweeks during the Class Period, but did not work 39 or more hours per week during fifty of those weeks, such Claimant will still be paid a settlement amount based on the credit he or she receives as stated above for the days actually worked during 65 of the full workweeks worked, and (ii) if a Claimant worked as a Reservation Clerk at Metro during one hundred full workweeks during the Class Period, but did not work 39 or more hours per week during only 20 of those weeks, such Claimant will be paid a settlement amount based on the credit he or she receives as stated above for the days actually worked during the 80 weeks that such Claimant actually worked at least 39 hours per work week.  The settlement payments will be based on overtime pay rate (1.5 times an employee's regular pay) calculated using regular pay rates of $12.00 per hour for Reservation Clerks and $17.80 per hour for Dispatchers.  The employee's share of payroll taxes applicable to payment of such wages shall be deducted from such net payment.  Claimants will also be entitled to an additional equal amount as payment for liquidated damages.  Attorneys' fees and litigation costs incurred by Plaintiffs' Class Counsel will be deducted from the Claimants' recovery on a pro-rata basis with half of the Claimant's allotment of attorney's fees deducted from his or her recovery of wages and the other half of his or her allotment deducted from his or her recovery of liquidated damages.   To the extent the total value of claims would otherwise increase Defendants' total liability above $175,000, each Claimant's payment will be proportionately reduced because Defendants shall not pay more than $175,000.

### How much will I get if I participate in the settlement?

Defendants' records show that you worked for ************* as a ********* between _____ and _____.  The estimated minimum amount you will receive, before deducting taxes, but after deducting your pro-rated share of attorneys fees and litigation costs, is approximately $_____ and the estimated maximum amount you will receive, before deducting taxes, but after deducting attorneys fees and litigation costs, is approximately $_____.  These estimates are based on Defendants' records which reflect that you worked at least 39 hours per week during _____(insert # of weeks)_____ weeks between August 13, 2007 and June 4, 2010.  It is important to understand that these numbers are estimates only.  The amount you will actually receive may depend on the number of other Claimants.

3

## What claims are being released as part of this settlement?

In order to participate in the settlement, you will be required to release certain claims.

Except as to such rights or claims as may be created by the settlement agreement, all members of the Settlement Class fully release, and discharge Defendants and all past, present and future direct and indirect parents, affiliates, subsidiaries; divisions, predecessors, successors, partners, joint venturers, affiliated organizations, shareholders, insurers, reinsureds and assigns, and each of its past, present, and future officers, commissioners, directors, members, trustees, agents, employees, attorneys, contractors, representatives, benefits plan sponsored or administered by Defendants, divisions, units, branches, and any other persons or entities acting on their behalf, from any and all claims, debts, liabilities; demands, obligations, penalties, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action of whatever kind or nature, whether known or unknown, that were alleged or that reasonably could have arisen out of the same facts alleged in the Litigation, including but not limited to any claims under federal or state law for unpaid wages, unpaid overtime, liquidated damages, punitive damages, unlawful deductions from wages, miscalculation of wage rates, record-keeping violations, unjust enrichment, breach of implied or express contracts, retaliation, quantum meruit, and promissory estoppel up to and including the date of final approval of the settlement agreement. This Release shall include, without limitation, claims that were raised, or that could have been raised, under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and the Missouri Minimum Wage Law, Mo. Rev. Stat, § 290.500 et seq.

## Who represents the Parties?

**CLASS COUNSEL**

Mark Potashnick
WEINHAUS & POTASHNICK
11500 Olive Blvd., Suite 133
St. Louis, MO 63141
Telephone: (314) 997-9150 ext. 2

**DEFENDANTS' COUNSEL**

James C. Hetlage
Lashly & Baer, P.C.
Attorney for Defendant Metro
714 Locust Street
St. Louis, MO 63101

Michael F. Harris
Harris, Dowell, Fisher & Harris, LC
Attorney for Defendant Above All Personnel
15400 S. Outer Forty Dr., Suite 202
Chesterfield, MO 63017

## How will the attorneys for the Class be paid?

Class Counsel will be paid from the Maximum Gross Settlement Amount. Class Counsel will submit a petition to the Court for their attorneys' fees, costs and expenses in an amount not to exceed ($58,333.33 plus litigation costs incurred). Defendants do not and will not oppose such application. Settlement Class Members may request from Class Counsel a copy of the

Motion for Attorneys' Fees, Costs, and Expenses. That Motion will also be a public document filed with the Court. The actual amount awarded will be determined by the Court to ensure that the amount of attorneys' fees, costs, and expenses is reasonable. Defendants will only pay Class Counsel the actual amount of fees, costs, and expenses awarded by the Court.

## What are my options?

You have four options with regard to this Settlement. You can: (1) participate in the settlement by doing nothing; (2) request to be excluded from the settlement; (3) dispute the amount of your payment as stated above; or (4) object to the settlement. You may object to the settlement, dispute the amount of your payment, and / or participate in the settlement so long as you do not request to be excluded (opt-out). Details about each option and how choosing that option will affect your rights under the law are explained below.

## What if I do nothing?

If you do not request to exclude yourself from the settlement (opt-out), you will be a member of the Settlement Class and will be deemed to have released federal and state wage and hour claims, as described above. You will receive payment by mail at your last known address.

## What if I choose to object to the settlement?

You can object to the terms of the settlement before final approval. However, if the Court approves the settlement over your objection, you will still be bound by the terms of the settlement if you did not request to exclude yourself from the settlement (opt-out). You may both object to the settlement and participate in it, so long as you do not request to exclude yourself from the settlement (opt-out).

Any written objections shall state each specific reason in support of your objection and any legal support for each objection. Your objection must also state the name and case number of this Litigation as stated at the top of this Notice and state your full name, address, date of birth, and the dates of your employment with Metro or Above All Personnel. To be valid and effective, any objections to approval of the settlement must be filed with the Court by mailing such written objection to Clerk of the Court, United States District Court, Eastern District of Missouri, 111 South 10th Street, 3rd Floor, St. Louis, Missouri 63102 and served upon each of the above-listed attorneys no later than January 11, 2011. **DO NOT TELEPHONE THE COURT.**

If you file an objection to the terms of this settlement, you may enter an appearance in *propria persona* (meaning you choose to represent yourself) or through your own attorney. To do so, you must file a Notice of Appearance with the Clerk of the United States District Court, Eastern District of Missouri, and deliver copies to each of the attorneys listed above. Such Notice of Appearance must be filed with and delivered to the above attorneys no later than January 11, 2011, which is twenty days before the final settlement approval hearing. You will then continue as a settlement class member either in *propria persona* or with representation by your own attorney, and you will be solely responsible for the fees and costs of your own attorney.

**What if I disagree with the Defendants' records about the number of weeks I worked as a \*\*\*\*\*\*\*\*\* during the liability period?**

If you believe in good faith that the number of weeks credited to you with having worked at least 39 hours is incorrect, you may submit a written, signed declaration by January 11, 2011, which is twenty days before the final settlement approval, to:

**James C. Hetlage**
**Lashly & Baer, P.C.**
**Attorney for Defendant Metro**
**714 Locust Street**
**St. Louis, Missouri 63101**

No dispute will be timely if postmarked after January 11, 2011. Counsel for the parties will attempt to resolve the challenge, and if unable to do so, will submit the challenge to the Court, which will make a final and binding determination without hearing or right of appeal.

You may both dispute the amount of your payment and participate in the settlement, so long as you do not request to exclude yourself from the settlement (opt-out).

**What if I want to exclude myself from or opt-out of the Settlement?**

Any member of the Settlement Class who does not wish to participate in the settlement may exclude themselves (i.e., "opt out") by mailing to the Defendant Metro's Counsel a written statement expressing their desire to be excluded from the Settlement Class, including their name (and former names, if any), current address, telephone number, Social Security number, and the dates of their employment with Metro or Above All Personnel. Any such written statement must be postmarked by **[INSERT DATE 60 DAYS FROM MAILING]** and sent to the following address:

**James C. Hetlage**
**Lashly & Baer, P.C.**
**Attorney for Defendant Metro**
**714 Locust Street**
**St. Louis, MO 63101**

Written requests that do not include all required information or that are not received by **[INSERT DATE 60 DAYS FROM MAILING]** will be deemed null, void, and ineffective.

Persons who submit valid and timely written requests to opt-out of the Settlement Class will not participate in the Settlement Class and will not be bound by the terms of the Settlement Agreement, if it is approved, or the Final Judgment in this Litigation.

**Who can answer questions regarding the settlement?**

This notice only summarizes this Litigation, the settlement, and related matters. For more information or if you have any questions (including whether you would like to receive a

copy of the Settlement Agreement to obtain additional details), you may contact Class Counsel at the addresses and numbers listed above.

**PLEASE DO NOT TELEPHONE THE COURT OR THE OFFICE OF THE CLERK FOR INFORMATION REGARDING THIS SETTLEMENT**

EXHIBIT 3


MEDIA STATEMENT

Plaintiff, on her own behalf and on behalf of other employees of Metro and Above All Personnel, recovered unpaid overtime wages and liquidated damages for a class of 102 Reservation Clerks and Dispatchers at Metro's Call-A-Ride facility.  The class representative alleged the employer required employees to work without pay ("off-the-clock") in logging on to computer systems and programs, proofreading reports, competing customer service calls and logging off from the computer systems and programs. Meia Burks v. The Bi-State Development Agency of the Missouri-Illinois Metropolitan District d/b/a Metro ("Metro") and S.M. Huber Enterprises, Inc. d/b/a Above All Personnel ("Above All Personnel"), Case No. 4:09CV1302 (MLM) (E.D.. Mo. 2010)

EXHIBIT 4

**RELEASE**

This Release ("Release") is dated October 23, 2010, and is provided by Meia Burks, a resident of the State of Missouri ("Burks"), as inducement to The Bi-State Development Agency of the Missouri-Illinois Metropolitan District d/b/a Metro ("Metro") and S.M. Huber Enterprises, Inc. d/b/a Above All Personnel ("Above All Personnel") (collectively, "Defendants") to enter into the Class Action Settlement Agreement, dated October 25, 2010, for the purpose of settlement of the claims asserted by Burks against Defendants in that certain lawsuit filed in the United States District Court for the Eastern District of Missouri, bearing Case No. 4:09CV1302 (MLM) (the "Litigation").

1.  For good and valuable consideration as described in the Class Action Settlement Agreement, upon the Court's final approval of the settlement between the Class Members and Defendants, as set forth in the Class Action Settlement Agreement, Burks does hereby release and forever discharge Defendants, together with their respective agents, servants, employees, attorneys, insurers, consultants, affiliated companies, subsidiaries, contract affiliates, assigns, and any predecessors and successors in interest, of and from any and all claims, demands, damages, actions, causes of action, or suits of any kind or nature whatsoever for all time up until the date of the Court's final approval of the Class Action Settlement Agreement, including, but not limited to, any claims arising under or based upon the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. 201, et seq., the Missouri Wage Payment Laws, Chapter 290 of the Missouri Revised Statutes, Missouri Human Rights Act, Mo.Rev.Stat. Chap. 213; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e et seq., as amended by the Civil Rights Act of 1991; the Civil Rights Acts of 1866 and 1871, 42 U.S.C. §§1981 and 1983; the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.; the Family and Medical Leave Act; the Employee Retirement Income Security Act of 1974; the Equal Pay Act of 1963, 29 U.S.C. §206(d)(1); the Rehabilitation Act of 1973, 29 U.S.C. §§701 to 794); or any other applicable federal, state or local employment, wage payment or employment discrimination statute or ordinance; and any contract, quasi contract, or tort claims, whether developed or undeveloped, arising from or related to Burks' employment with either Defendant, and the cessation of Burks' employment with either Defendant, and/or any and all claims in any way arising out of or related to those claims, matters, and facts set forth or described in the Litigation. This Release does not release Burks' right to pursue claims for enforcement of the terms of the Class Action Settlement Agreement.

2.  This Release covers and releases any and all claims whatsoever that Burks might have as of the date of this Release against any of the persons or entities released in paragraph 1 above, regardless of whether such claims are known or unknown, are suspected or unsuspected, or have accrued or will accrue in the future.

3.  This Release shall be governed by Missouri law.

4.   This Release shall be binding upon and inure to the benefit of the parties and their respective successors, heirs and assigns.

IN WITNESS WHEREOF, Burks has signed this Release as of the day and year first above written.

MEIA BURKS

Date: 10·23·10

2